## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## WESTERN DIVISION

| | | |
|---|---|---|
| **KENNY PREWITT,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **Case No.:  7:15-CV-2028-RDP** |
| | } | |
| **CITY OF NORTHPORT, AL,** | } | |
| | } | |
| **Defendant.** | } | |

## <u>MEMORANDUM OPINION</u>

Although there is a plethora of similar quotes attributed to others, Woody Allen, the zany actor, writer, director, and playwright once reportedly said "80 per cent of success is just showing up." In this case, Plaintiff Kenny Prewitt did not heed Mr. Allen's advice. As the undisputed evidence makes clear, on five occasions over a period of about a year, Mr. Prewitt did not show up on time for work.

This employment discrimination case is before the court on Defendant's Motion for Summary Judgment. (Doc. # 16). The Motion has been fully briefed. (Docs. # 16, 18 and 19). For the reasons discussed below, Defendant's Motion is due to be granted.

## I.    Relevant Undisputed Facts[1]

Plaintiff Kenny Prewitt was employed by the City of Northport as a laborer.  He was

---

[1] The facts set out in this opinion are gleaned from the parties' submissions of facts claimed to be undisputed, their respective responses to those submissions, and the court's own examination of the evidentiary record. All reasonable doubts about the facts have been resolved in favor of the nonmoving party – here, Plaintiff. *See Info Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002). Unusually, Plaintiff largely adopts Defendant's statement of undisputed facts. (Doc. # 18 at 1). These are the "facts" for summary judgment purposes only. They may not be the actual facts that could be established through live testimony at trial. *See Cox v. Admr. U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994).

hired on February 8, 1987, and worked in the Public Works Department. (Doc. # 17 pp. 20-22[2]; Ex. 31).

In December 2011, Brooke Starnes became Director of the Northport Public Works Department. (Doc. # 17 p. 32-37; Doc. # 17 at 105-113 ¶ 3). One of the first things that Starnes did as Director of Public Works was to issue a new attendance policy. (Doc. # 17 at 105-113 ¶¶ 5, 6). On December 6, 2011, she issued a memorandum to all employees regarding the policy titled "Change of Procedure." The Memo set forth the following new rules:

- Any employee that arrives at work after 7:00 a.m. is late.

- Crews must be off premises in the morning by 7:15 a.m. and in no earlier than 3:15 p.m.

- No call-ins after 6:30 a.m. Employees must call his/her superintendent AND leave a voicemail on the upstairs office phone (205-333-3003).

- THESE RULES ARE MANDATORY AND ARE NOT OPTIONAL; FAILURE TO ABIDE BY ANY OF THESE RULES WILL RESULT IN DISCIPLINARY ACTION.

(Doc. # 17 at 105-113 ¶ 6; Ex. 1).

All Public Works employees were also instructed on the new policy changes in a December 7, 2011 meeting. At that meeting, employees were given a Public Works Department Memo addressing how employees needed to request leave, when each employee needed to call in, and how each employee was to call in every day if they were not able to come to work. Employees, including Plaintiff, signed an acknowledgement of attendance at the meeting and of receipt of the new procedures. (Doc. # 17 at 105-113 ¶ 7; Doc. # 17 pp. 34, 38-39). Plaintiff acknowledges that he was fully aware of the call-in procedure, and knew to call both his superintendent and the upstairs phone. (Doc. # 17 p. 39).

---

[2] The page numbers listed for Plaintiff's deposition are to the actual deposition page, rather than to the CM/ECF page number.

### A. Plaintiff Receives a February 22, 2012 Verbal Warning

Not long after the new policy was implemented, on February 22, 2012, Plaintiff did not call in until after 7:30 a.m. Under the City's progressive discipline policy, Plaintiff received a verbal warning for failing to comply with the new call-in procedures. Plaintiff told his supervisor that he understood and would correct the problem, but he refused to sign the warning. (Doc. # 17 pp. 41-43). Plaintiff did not appeal the verbal warning. (Doc. # 17 p. 43).

### B. Plaintiff Receives a May 18, 2012 Written Warning

On May 18, 2012, Plaintiff was absent from work. According to the warning he received, Plaintiff did not have approved leave and failed to call in to his supervisor and the Public Works office. (Doc. # 17 pp. 44-46). Plaintiff made a verbal request for leave, but he acknowledged that he understood that verbal requests did not comply with the new Attendance Policy. (*Id.*). Pursuant to the City's progressive discipline policy, Plaintiff received a written warning for his second Attendance Policy violation. On May 21, 2012, Plaintiff signed a form acknowledging the violation and receipt of the written warning. (Doc. # 17 pp. 44-45, Ex. 3; Doc. # 17 at 105-113 ¶11). In the warning, Plaintiff was explicitly warned that the "next occurrence may result in suspension without pay." (Doc. # 17 p. 46, Ex. 3).

### C. Plaintiff is Suspended Without Pay on June 6, 2012

Less than one month later, on June 6, 2012, Plaintiff did not report to work at 6:00 a.m. for roll call as scheduled, nor had he completed a leave request. He did not call in before the prescribed time, 5:30 a.m., nor did he leave a voicemail at the Public Works' office. Plaintiff called the department secretary at approximately 8:30 a.m. to report that he was on his way to work, and when he arrived at 9:00 a.m., stated that he had overslept. (Doc. # 17 pp 47-49, Ex. 11).

Plaintiff was suspended without pay for three (3) days for this incident. (Doc. # 17 pp. 49 – 51, Ex. 11). The suspension notice warned that "Future problems of this nature will result in other disciplinary action up to and including termination." *Id.* Plaintiff appealed the suspension to the City Administrator, and asked for a Pre-Disciplinary Hearing. (Doc. # 17 p. 50). Following a hearing, the City Administrator affirmed Plaintiff's suspension without pay for three days. (Doc. # 17 p. 52). Plaintiff initially appealed to the Northport Civil Service Board, but he withdrew his appeal and took the three-day suspension without pay. (Doc. # 17 pp. 53 – 54, Exs. 13-14).

D.      <u>Plaintiff's First Termination on August 24, 2012</u>

Not long after his suspension without pay, Plaintiff again failed to show up for work on time without calling. (Doc. # 17 pp. 56-57). The disciplinary notice for this event stated:

> "On Friday, August 24, 2012, you did not report to work at 6:00 a.m. for roll call as scheduled, nor did you complete a leave request form prior to this occurrence. You did not call in to report your absence before the prescribed time (5:30 a.m.), nor did you call and leave a voicemail at the Public Works' office. At approximately 9:00 a.m., you arrived at City Hall for our employee meeting. You stated that you had been at the hospital and couldn't call because you had lost your phone."

(Doc. # 17 pp. 56-57; Ex. 15). Plaintiff signed the disciplinary warning. Because it was his fourth warning, Plaintiff was terminated under the City's progressive discipline policy. (Doc. # 17 pp. 57 – 58; Ex. 15).

E.      <u>The City Administrator Reduces Plaintiff's Termination to Suspension.</u>

Plaintiff appealed his August 24, 2012 termination to the City Administrator. After a Pre-Disciplinary hearing, on September 5, 2012, Plaintiff's termination was reduced to a fifteen day suspension without pay. In making this decision, the City Administrator specifically noted that: "[t]he next step for Mr. Prewitt in progressive discipline will be termination of employment."

(Doc. # 17 pp. 58- 61; Ex. 16).

F.    Plaintiff's Second Termination on November 30, 2012

Three months later, Plaintiff again failed to report for work. Because his last warning indicated that the next step in progressive discipline would be termination, Plaintiff was terminated for this offense. (Doc. # 17 pp. 62-63; Ex. 17). The write up indicated as follows:

> "On Friday, November 30, 2012, Mr. Prewitt did not report to work at Public Works.  He did not fill out a "leave request form" in advance, nor did he call in by the prescribed time (6:30 a.m.) Friday morning."

(Doc. # 17 p. 63; Ex. 17). Plaintiff again appealed his termination, but the City Administrator declined to overturn the second termination. Therefore, Plaintiff appealed his termination to the Northport Civil Service Board. (Doc. # 17 p. 65; Ex. 18).

G.    The Civil Service Board Gives Plaintiff One Final Chance in January 2013

On January 15, 2013, the Northport Civil Service Board held a hearing on Plaintiff's appeal of his second termination. (Doc. # 17 p. 66). At the conclusion of the hearing, the Board agreed to return Plaintiff to work subject to several conditions. (Doc. # 17 p. 67; Ex. 19). Plaintiff was required to sign an agreement as a condition of returning to work.  *Id*.  The January 15, 2013 agreement between Plaintiff and the City of Northport contained the following provisions:

> 1.    Kenny Prewitt agrees to resign as an employee of the City of Northport on the first day of his eligibility for retirement.
>
> …
>
> 3.    The parties agree that Kenny Prewitt's salary will be reduced from a Level 20 Laborer to a Level 10 Laborer for the remainder of his employment with the City of Northport.
>
> 4.    *Kenny Prewitt hereby acknowledges that he has been given several additional opportunities to keep his job by the City of Northport and hereby*

> *agrees that any further failure to report for work, reporting late to work, or failure to follow the rules applicable to all Public Works' employees of the City of Northport will result in his termination, even though he has not yet reached his retirement date.*

(Doc. # 17 pp. 67 – 70; Ex. 19) (emphasis added).

Plaintiff testified that he understood that any failure in the future to follow policy upon his return to work would result in his termination. (Doc. # 17 pp. 70-71). And, Plaintiff acknowledges that he was given two (2) additional chances to keep his job. (Doc. # 17 p. 71).

H.    Plaintiff's Final Termination on April 10, 2013

A number of Plaintiff's co-workers volunteered to give him rides to work to help him get there on time. (Doc. # 17 pp. 74-76). David Ball regularly went by Plaintiff's house and waited for him to come out. If he did not come out, Ball would honk, call, or knock on his door. If Plaintiff still did not come out, Ball had no choice but to leave to get himself to work on time. (Doc. # 17 at 127-29 ¶¶ 6, 8). In April 2013, Ball tried to give Plaintiff a ride to work, but Plaintiff did not come to the door. Ultimately Ball left, and Plaintiff missed work. (Doc. # 17 at 127-29). Plaintiff was fired for this April incident. (*Id.*).

On the morning of Monday April 8, 2013, Plaintiff presented two Leave Request Forms to his supervisor, Brad Walker. (Doc. # 17 p. 77; Exs. 21 - 22). Both requests were in writing, and both were dated and signed by Plaintiff on April 8, 2013. (Doc. # 17 p. 78; Exs. 21-22). On the first form, Plaintiff requested to take sick leave for the remaining five hours of his shift on April 8, and Walker approved the leave. (Doc. # 17 p. 79; Doc. # 17 at 131-33 ¶ 8). The second leave form requested a vacation day for April 9, 2012. Walker also approved that request for leave. (Doc. # 17 p. 81; Ex. 22; Doc. # 17 at 131-33 ¶ 7, 8).[3] Each of these forms state:

> *Anyone on leave without approval will be subject to disciplinary action.*

---

[3] Plaintiff had also submitted leave requests on April 2 and on April 4, 2013 which were approved for time off on April 4 and 5, 2013.. (Doc. # 17 at 83-84).

This form must be completed and given to the department head through the Chain of Command in advance.

(Doc. # 17 pp. 76, 80; Exs. 21 - 22) (emphasis in original).

Plaintiff was scheduled for work on Wednesday, April 10, 2013, but he failed to show up or call in. (Doc. # 17 p. 92; Doc. # 17 at 131-33 ¶9). Plaintiff's supervisor, Walker, e-mailed Starnes, the Public Works Director, to give notice that Plaintiff had failed to show for work on time. (Doc. # 17 at 131-33 ¶ 10; Ex. 1). As a result, Plaintiff was terminated on April 11, 2013. (Doc. # 17 p. 93; Ex. 26). The April 11, 2013 termination notice explained:

On Wednesday April 10, 2013, you did not report for roll call at 7:00 a.m. as scheduled, nor did you have permission to be off work on this day in question.

(*Id.*).

Plaintiff again appealed his termination to the Northport Civil Service Board. (Doc. # 17 p. 95; Ex. 27). The former HR Director Rodger Fisher stamped the Appeal "Received" on April 17, 2013, and put his initials "RF" on the appeal letter. (*Id.*). However, Fisher's last day of employment with the City of Northport was two days later, on April 19, 2013, and a new Human Resources Director, Joseph Rose, was hired by the City two months later on June 24, 2013. (Doc. # 17 at 115-18 ¶ 2). Rose was unaware of the appeal until over one year later when, on June 4, 2014, Plaintiff's attorney sent a letter to the City of Northport asking about the status of the Civil Service Board appeal of Plaintiff's termination. (Doc. # 17 p. 97; Doc. # 17 at 115-18 ¶ 3). Rose looked in Plaintiff's file and discovered the letter of appeal that was stamped "received" but apparently had not forwarded to the Civil Service Board. (Doc. # 17 at 115-18 ¶ 5, 6).

The Northport Civil Service Board heard Plaintiff's appeal on July 29, 2014. (Doc. # 17 Ex. 29). That same day, after a hearing at which Plaintiff was represented by counsel, in a

unanimous decision, the Northport Civil Service Board upheld his termination. (Doc. # 17 p. 99-100; Ex. 30).

<u>Plaintiff's January 15, 2015 EEOC Charge</u>

Almost six months after the Civil Service Board's decision, and nearly 21 months after his April 11, 2013 termination, on January 15, 2015, Plaintiff filed a charge of discrimination with the EEOC. (Doc. # 17 pp. 103-04; Ex. 31). In the charge, Plaintiff alleged he was discriminated against based on his age and race. (*Id.*).

In its Motion for Summary Judgment, Defendant sets forth a list of Caucasian and younger employees who were treated the same or more harshly than Plaintiff. (Doc. # 16 at 25-26). Plaintiff focuses on Brad Walker's discipline for attendance.

> Employee Brad Walker (Caucasian, 39 years of age) is employed as a Right of Way Superintendent. Like Plaintiff, he was five minutes late to work on August 20, 2013 and given a verbal warning. Over two years later, he was late again and was given a verbal. However, Northport's policy is that all discipline over a year rolls off. Thus, on the second offense, he had started over.

(Doc. # 16 at 26 (citing Doc. # 17 at 105-113 ¶¶ 29 – 41)). Plaintiff has failed to identify any other Caucasian employees or younger employees who he contends were treated differently or more favorably than he was under the new attendance policy. (Doc. # 17 pp. 102, 105-09, 113-14).

## II.     Summary Judgment Standard

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or

filings which it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323. Once the moving party has met its burden, Rule 56(c) requires the non-moving party to go beyond the pleadings and – by pointing to affidavits, or depositions, answers to interrogatories, and/or admissions on file – designate specific facts showing that there is a genuine issue for trial. *Id.* at 324.

The substantive law will identify which facts are material and which are irrelevant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("*Anderson*"). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *See Allen v. Bd. of Pub. Educ. For Bibb Cty.*, 495 F.3d 1306, 1314 (11th Cir. 2007); *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine, "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *See Id.* at 249.

When faced with a "properly supported motion for summary judgment, [the non-moving party] must come forward with specific factual evidence, presenting more than mere allegations." *Gargiulo v. G.M. Sales, Inc.*, 131 F.3d 995, 999 (11th Cir. 1997). As *Anderson v. Liberty Lobby, Inc.*, teaches, under Rule 56(c) a plaintiff may not simply rest on her allegations made in the complaint; instead, as the party bearing the burden of proof at trial, she must come forward with at least some evidence to support each element essential to her case at trial. *See Anderson*, 477 U.S. at 252. "[A] party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [her] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial.'" *Id.* at 248 (citations omitted).

Summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322. "Summary judgment may be granted if the non-moving party's evidence is merely colorable or is not significantly probative." *Sawyer v. Southwest Airlines Co.*, 243 F. Supp. 2d 1257, 1262 (D. Kan. 2003) (citing *Anderson*, 477 U.S. at 250-51).

"[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. "Essentially, the inquiry is 'whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." *Sawyer*, 243 F. Supp. 2d at 1262 (quoting *Anderson*, 477 U.S. at 251-52); *see also LaRoche v. Denny's, Inc.*, 62 F. Supp. 2d 1366, 1371 (S.D. Fla. 1999) ("The law is clear . . . that suspicion, perception, opinion, and belief cannot be used to defeat a motion for summary judgment.").

## III.    Analysis

Plaintiff contends that Defendant discriminated against him on the basis of his race and age. The Complaint clearly raises a claim regarding Plaintiff's termination. (Doc. # 1 at 2-3). It further appears to assert that Plaintiff was subjected to a hostile environment and that he was constructively terminated (Doc. # 1 at 3), but Plaintiff has presented no Rule 56 facts to support such a claim.[4] (Doc. # 18 at 5).

---

4 Although the court has reviewed the documents included in the Rule 56 record, a district court need not "parse a summary judgment record to search out facts or evidence not brought to the court's attention." *Atlanta Gas Light Co. v. UGI Utilities, Inc.*, 463 F.3d 1201, 1208 n.11 (11th Cir. 2006).

**A.** **Plaintiff's Termination Claim based on Title VII and the ADEA is Time-Barred**

Plaintiff was progressively disciplined twice and then terminated on three separate occasions for violations of Defendant's Attendance Policy. On two of those three occasions when he was fired, however, Plaintiff was given a "second" chance and reinstated. After he failed to show up for work yet again, Plaintiff was terminated by Defendant the third and last time on April 10, 2013. He filed his EEOC charge on January 15, 2015. (Doc. # 17 pp. 103-04; Ex. 31).

In a non-deferral state, such as Alabama, a plaintiff may not assert a race discrimination claim under Title VII or an age discrimination claims under the ADEA unless he first files a charge of discrimination with the EEOC within 180 days of the unlawful employment practice. *See* 42 U.S.C. § 2000e–5(e)(1); 29 U.S.C. § 626(d)(1); *Jones v. Dillard's, Inc*., 331 F.3d 1259, 1263 (11th Cir. 2003), *certified question answered sub nom. Byrd v. Dillard's, Inc*., 892 So. 2d 342 (Ala. 2004); *Wilkerson v. Grinnell Corp*., 270 F.3d 1314, 1317 (11th Cir. 2001). Failure to file a timely EEOC charge results in a bar of the claims contained in the untimely charge. *Alexander v. Fulton County, Ga.*, 207 F.3d 1303, 1332 (11th Cir. 2000). Here, it is undisputed that Plaintiff did not file an EEOC charge within 180 days of his termination.

As the Supreme Court has held, "filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a prerequisite that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982). Plaintiff argues that his claim is not untimely because he filed an appeal of his third termination.

Where a plaintiff complains of his discharge, the time period in which to file an EEOC charge commences when the employer made the final decision to fire the employee and

communicated it to the employee. *See Chardon v. Fernandez*, 454 U.S. 6, 8–9 (1981) (per curiam). An "employee's pursuant of an internal appeal, 'or some other method of collateral review of an employment decision, *does not toll the running of the limitations period.*'" *Jordan v. City of Montgomery*, 283 Fed. App'x 766, 768 (11th Cir .2008) (quoting *Delaware State College v. Ricks*, 449 U.S. 250, 261 (1980)) (emphasis added); *see also Jackson v. Seaboard Coast Line R. Co.*, 678 F.2d 992, 1006 n. 20 (11th Cir. 1982); *Stafford v. Muscogee County Bd. of Educ.*, 688 F.2d 1383, 1388 (11th Cir. 1982). Because the filing of an appeal did not toll the 180-day limitations period for the filing of an EEOC charge, and Plaintiff did not file his charge for well over a year after the decision regarding his termination was communicated to him, Plaintiff's Title VII and age discrimination claims relating to the termination of his employment are time-barred.[5]

**B.    Plaintiff Failed to Exhaust Administrative Prerequisites for a Hostile Environment or Constructive Discharge Claim**

A "plaintiff's judicial complaint is limited by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Gregory v. Ga. Dep't of Human Res.*, 355 F.3d 1277, 1280 (11th Cir. 2004) (internal quotation marks omitted). Judicial claims that "amplify, clarify, or more clearly focus" the allegations in the EEOC charge are permitted, but the plaintiff cannot allege new acts of discrimination. *Id.* at 1279–80 (quoting *Wu v. Thomas*, 863 F.2d 1543, 1547 (11th Cir. 1989)). Even for retaliation claims, which may grow out of an initial charge, when the alleged retaliatory action occurs *before* an EEOC charge is filed, a plaintiff must exhaust his or her administrative remedies as to that claim by including factual information in the charge that discloses the factual basis for the claim. *See, e.g., Thomas*

---

[5] Although Plaintiff presented no factual evidence regarding an alleged hostile environment or conditions which may have constituted a constructive discharge, logic dictates that either of those claims (if they were properly pled) necessarily arose during Plaintiff's employment, before his termination. Therefore, any Title VII or age discrimination claims based on those theories would also be time-barred.

*v. Miami Dade Public Health Trust*, 369 F. App'x 19, 22 (11th Cir. 2010) (noting that any "acts of retaliation that occurred prior to the date of the EEOC charge that were not included in the charge were not exhausted and could not be considered by the district court."), *reh'g en banc denied*, 402 Fed. Appx. 513 (2010). Because facts supporting any purported hostile environment or constructive discharge claim would have occurred prior to Plaintiff's termination and the filing of his EEOC charge, those claims are subject to exhaustion requirements. *Houston v. Army Fleet Services, L.L.C.*, 509 F.Supp.2d 1033, 1043 (M.D. Ala. 2007).

Plaintiff failed to include any factual allegations regarding the alleged constructive discharge or hostile environment in the body of his EEOC charge. (Doc. # 17 at 95). The text of Plaintiff's EEOC charge reads as follows;

> I, Kenny Prewitt, worked for the city of Northport, Alabama in the Public Works Department. I was discriminated against because of my age and race when I applied for vacation and was denied such during my last days that I had to work before I retired. This was done to keep me from retiring and getting younger workers to replace me at the city. Other Caucasians were not treated as I was during their last days before retirement. All actions were in Violation of Title VII of the Civil Rights Act of 1964 and Amended Civil Rights Act of 1991.

(Doc. # 17 at 95).

Well settled law requires exhaustion of each discrete claim of discrimination. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110-13 (2002). Plaintiff has only exhausted his administrative remedies as to his termination claim. (Doc. # 17 at 95). Therefore, in addition to being untimely, any constructive discharge or hostile environment claim by Plaintiff under Title VII or the ADEA is barred for failure to exhaust administrative prerequisites. *See Thomas*, 369 F. App'x at 22; *Houston*, 509 F.Supp.2d at 1043.

### C. Plaintiff Has Failed to State a Constructive Discharge or Hostile Environment Claim

Even if such claims were not barred as untimely (and, to be clear, they would be untimely), or if Plaintiff had exhausted his administrative remedies for such claims (again, to be clear, he did not), Plaintiff failed to plausibly plead constructive discharge and hostile environment claims in his Complaint, and he has presented no Rule 56 evidence to support such claims.

To establish a hostile environment claim, a plaintiff must show that: (1) he belongs to a protected group; (2) he has been subjected to unwelcome harassment; (3) the harassment was based on a protected characteristic of the employee; (4) the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) the employer was responsible for such environment under either a theory of vicarious or direct liability. *Miller v. Kenworth of Dothan, Inc*., 277 F.3d 1269, 1275 (11th Cir. 2002). "Under the constructive discharge doctrine, an employee's reasonable decision to resign because of unendurable working conditions is assimilated to a formal discharge for remedial purposes. The inquiry is objective: Did working conditions become so intolerable that a reasonable person in the employee's position would have felt compelled to resign?" *Pa. State Police v. Suders*, 542 U.S. 129, 141, 124 S.Ct. 2342, 159 L.Ed.2d 204 (2004).

The evidence in the Rule 56 record indicates that Plaintiff had attendance problems after a more stringent attendance policy was adopted by the City. It further shows that even after Plaintiff was disciplined for his attendance problems, those problems continued. Twice, Plaintiff's attendance warranted termination under Defendant's progressive discipline procedures, and twice, his attendance-related terminations were reversed. After the second

reversed termination decision, on January 15, 2013, Plaintiff signed a "last chance" agreement which contained the following provision:

> Kenny Prewitt hereby acknowledges that he has been given several additional opportunities to keep his job by the City of Northport and *hereby agrees that any further failure to report for work, reporting late to work, or failure to follow the rules* applicable to all Public Works' employees of the City of Northport *will result in his termination*, even though he has not yet reached his retirement date.

(Doc. # 17 pp. 67 – 70; Ex. 19) (emphasis added).[6]

On the morning of Monday April 8, 2013, after already having leave on April 4 and 5, Plaintiff presented two Leave Request Forms to his supervisor, Brad Walker. (Doc. # 17 p. 77; Exs. 21 – 22). The first form requested sick leave for the remaining five hours of April 8, and the second leave form requested a vacation day for April 9, 2012. Walker approved both leave requests. (Doc. # 17 p. 79-81; Doc. # 17 at 131-33 ¶¶ 7, 8). Plaintiff was scheduled to work on Wednesday, April 10, 2013, but he failed to show up or call in. (Doc. # 17 p. 92; Doc. # 17 at 131-33 ¶9). As a result, on April 11, 2013, Plaintiff's employment was terminated. (Doc. # 17 p. 93; Ex. 26). Nothing about these facts even arguably suggests that Plaintiff was subjected to severe or pervasive harassment because of his race or age, or that his working conditions had become so intolerable that a reasonable person would have felt compelled to resign. The Rule 56 record is devoid of any facts supporting hostile environment or constructive discharge claims. Therefore, Defendant is entitled to summary judgment on any hostile environment or constructive discharge claims.

### D. Plaintiff's Termination Claim

After careful review, the court concludes that Defendant is entitled to summary judgment on Plaintiff's termination claim

---

[6] Under the new attendance policy, verbal requests for leave were not allowed. (Doc. # 17 pp. 44-46).

1.      **Plaintiff Failed to Establish a Prima Facie Case of Race or Age Discrimination Regarding His Termination**

When a plaintiff offers circumstantial evidence to prove a Title VII, ADEA or § 1981 claim, the claim is analyzed under the analytical framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Title VII and § 1981 "have the same requirements of proof and use the same analytical framework." *Standard v. A.B.E.L. Services, Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998); *see also Cooper v. Southern Co.*, 390 F.3d 695, 724 (11th Cir. 2004); *Combs v. Plantation Patterns*, 106 F.3d 1519, 1527 (11th Cir. 1997). The Eleventh Circuit also uses the *McDonnell-Douglas* framework for ADEA cases. *Chapman v. AI Transport*, 229 F.3d 1012, 1024 (11th Cir. 2000) (en banc). Under the *McDonnell Douglas* and *Burdine*[7] framework, the plaintiff first has the burden of establishing a prima facie case of discrimination, which creates a rebuttable presumption that the employer acted illegally. *Combs* 106 F.3d at 1527-28. The methods of presenting a prima facie case, as well as the exact elements of the case, are not fixed; rather they are flexible and depend to a large degree upon the facts of the particular situation.  *See, e.g., Nix v. WLCY Radio/Rahall Communications*, 738 F.2d 1181, 1185 (11th Cir. 1984); *Lincoln v. Board of Regents of Univ. Sys.,* 697 F.2d 928, 937 (11th Cir. 1983).

In general, a plaintiff must demonstrate that (1) he belongs to a protected class; (2) he was subject to an adverse employment action; (3) his employer treated similarly situated employees outside his classification more favorably; and (4) he was qualified to perform the job. *See Knight v. Baptist Hosp. of Miami, Inc.*, 330 F.3d 1313, 1316 (11th Cir. 2003). Once the plaintiff has established a prima facie case and, thereby, has raised the presumption of discrimination, the burden of production shifts to the employer to articulate a legitimate,

_____

[7] *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981).

nondiscriminatory reason for its actions. *See Combs*, 106 F.3d at 1528. If the employer satisfies

that burden by articulating one or more such reasons, then the presumption of discrimination

falls and the burden of production again shifts to the plaintiff to offer evidence sufficient for a

reasonable jury to conclude that the employer's supposedly legitimate reason is merely a pretext

for illegal discrimination.[8] *Chapman*, 229 F.3d at 1030.

Defendant contends that Plaintiff has failed to identify a similarly situated comparator

who was treated more favorably. In response to Defendant's Motion, Plaintiff identifies Brad

Walker as a comparator. The sum-total of Plaintiff's argument in this regard is as follows:

> By Defendant's own admission, no Caucasian employee has been given an
> ultimatum of last chance in addition to reduction in pay-rate. Additionally,
> Defendant admits that disciplines after a year rolls off. [sic] (Def. Summ. Judg.
> Mot. P.27. – Employee Brad Walker). Unfortunately, the rule appears to apply to
> a Caucasian worker and not the Plaintiff.

(Doc. # 18 at 7-8).

Brad Walker is simply not an appropriate comparator. Employees identified as

comparators must be similarly situated to a plaintiff in all relevant respects. *Wilson v. B/E*

*Aerospace, Inc.*, 376 F.3d 1079, 1091 (11th Cir. 2004); *Holifield v. Reno*, 115 F.3d 1555, 1562

(11th Cir. 1997). The Eleventh Circuit has held that this means "[t]he comparator must be nearly

identical to the plaintiff." *Wilson*, 376 F.3d at 1091; *Maniccia v. Brown*, 171 F.3d 1364, 1368

(11th Cir. 1999).

As an initial matter, Walker is not an appropriate comparator because he and Plaintiff had

different supervisors (indeed, Walker was Plaintiff's supervisor). *See Silvera v. Orange Cnty.*

*Sch. Bd.*, 244 F.3d 1253, 1261 n. 5 (11th Cir.2001) (stating that "differences in treatment by

different supervisors or decision makers can seldom be the basis for a viable claim of

---

[8] If the proffered reason is one that might motivate a reasonable employer, a plaintiff cannot recast the
reason but must meet it head on and rebut it. Simply quarreling with that reason is not sufficient. *Chapman*, 229
F.3d at 1030.

discrimination," but ultimately declining to address the underlying discrimination claim); *see also Jones v. Bessemer Carraway Med. Ctr.*, 137 F.3d 1306, 1312 n. 7 (11th Cir.) (stating that individuals with different supervisors than the plaintiff "may be sufficient to prevent them from being considered 'similarly situated' with Plaintiff"), *superseded in other part by*, 151 F.3d 1321 (11th Cir.1998); *Jones v. Gerwens*, 874 F.2d 1534, 1541 (11th Cir.1989) (same).

Moreover, "[i]n determining whether employees are similarly situated for purposes of establishing a prima facie case, it is necessary to consider whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways." *Maniccia*, 171 F.3d at 1368 (quoting *Jones v. Bessemer Carraway Med. Ctr.*, 137 F.3d at 1311). Thus, we require "the quantity and quality of the comparator's misconduct be nearly identical to prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges." *Id.* Even if a plaintiff and a comparator are similar in some respects, differences in their overall record may render them not "similarly situated" for purposes of establishing a prima facie case. *See, e.g., Knight v. Baptist Hosp. of Miami, Inc.*, 330 F.3d 1313, 1316-19 (11th Cir. 2003) (the employee and comparator who committed the same act were not similarly situated because the comparator's overall record was better). Walker's attendance violations and discipline were as follows:

> Employee Brad Walker (Caucasian, 39 years of age) is employed as a Right of Way Superintendent. Like Plaintiff, he was five minutes late to work on August 20, 2013 and given a verbal warning. Over two years later, he was late again and was given a verbal. However, Northport's policy is that all discipline over a year rolls off. Thus, on the second offense, he had started over.

(Doc. # 17 at 105-113 ¶¶ 29 – 41). Walker had one attendance policy violation in 2013 which involved him being five minutes late. He was given a verbal warning, and then had no further attendance policy violations for two years. (Doc. # 17 at 105-113 ¶¶ 29 – 41).

Plaintiff had an initial attendance policy violation in 2012 and, like Walker, was given a

verbal warning. But it is there that any similarity between the two ends. As discussed in detail above, after his initial attendance policy violation, Plaintiff never went an entire year without another attendance policy violation. Rather, Plaintiff had a second violation within three months of his first violation. Then he had a third violation within a month of his second violation. He also had a fourth violation within three months of his third violation, and a fifth violation just over three months after his fourth violation. In all, Plaintiff had five attendance policy violations within a year's time. Thus, there simply is no credible argument that Walker is an appropriate comparator for Plaintiff. Defendant is entitled to summary judgment on Plaintiff's termination claim because Plaintiff has failed to present Rule 56 evidence establishing that Defendant treated similarly situated employees outside his classification more favorably. *See Knight*, 330 F.3d at 1316.

### 2. Defendant Has Articulated a Legitimate Non-Discriminatory Reason for Plaintiff's Termination

Even if Plaintiff had presented a prima facie case of discrimination regarding his termination, Defendant has presented Rule 56 evidence that establishes a legitimate, non-discriminatory reason for his termination. Brooke Starnes, who implemented the new attendance policy, testified by affidavit that, in January 2013, after a series of five attendance policy violations in a one year period, Plaintiff was allowed to return to work and signed a last chance agreement. (Doc. # 17 at 108). The last chance agreement provided that "that any further failure to report for work, reporting late to work, or failure to follow the rules applicable to all Public Works' employees of the City of Northport will result in his termination, even though he has not yet reached his retirement date." (Doc. # 17 pp. 67 – 70; Ex. 19). Three months later, Plaintiff was scheduled to work April 10, 2013, but failed to report to work. (*Id.*). Therefore, despite being given a last chance, Plaintiff burned his last chance and his employment was terminated.

(*Id.*).

**3.    Plaintiff Has Failed to Establish that Defendant's Reasons for His Termination Were Pretextual**

Finally, even if Plaintiff were able to establish a prima facie case of either race or age discrimination (which he cannot), his claims nevertheless fail because he has failed to show that the reasons given by Defendant for its decision to terminate his employment were a pretext for race or age discrimination. "[T]o avoid summary judgment [the plaintiff] must introduce significantly probative evidence showing that the asserted reason is merely a pretext for discrimination." *Clark v. Coats & Clark, Inc.,* 990 F.2d 1217, 1228 (11th Cir. 1993) (citations omitted).  A reason is not pretext for discrimination or retaliation "unless it is shown both that the reason was false, and that discrimination [or retaliation] was the real reason." *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 515 (1993).

To establish pretext, a plaintiff cannot recast the proffered reason, but must meet it head on and rebut it. *Holland v. Gee*, 677 F.3d 1047, 1055 (11th Cir. 2012).  The plaintiff must show "weaknesses, implausibilties, inconsistencies, incoherencies, or contradictions in the employer's rationale." *Id.* at 1055-56 (quotation omitted).  The inquiry into pretext centers on the employer's beliefs, not the employee's beliefs or "reality as it exists outside of the decision maker's head." *Alvarez v. Royal Atlantic Developers, Inc.,* 610 F.3d 1253, 1266 (11th Cir. 2010). As noted by the Eleventh Circuit in *Damon v. Fleming Supermarkets of Florida, Inc.,* "[courts] are not in the business of adjudging whether employment decisions are prudent or fair. Instead our sole concern is whether unlawful discriminatory [or retaliatory] animus motivates a challenged decision." 196 F.3d 1354, 1361 (11th Cir. 1999).

In his Response to Defendant's Motion for Summary Judgment, Plaintiff has not even attempted to argue that Defendant's articulated reasons for his termination were pretextual. (*See,*

*generally*, Doc. # 18). In presenting facts in support of his Response, Plaintiff adopted and incorporated Defendant's undisputed facts "up to the new negotiated contractual agreement." (Doc. # 18 at 5). Factually, Plaintiff asserts that he "presented the Defendant with the required number of leave/vacation forms to allow for such absence." (*Id.*). In support of this statement, Plaintiff points to a statement from his co-worker Owen Holston. (Doc. # 18 at 5). But Holsten merely stated that, "one Monday morning," he saw Plaintiff filling out "several" leave forms. (Doc. # 18-2). Holsten admitted that did not "know for which days as it was none of my business." (Doc. # 18-2). Not only does Holsten's statement fail to establish that this occurred in April 2013, but it also says nothing about whether those requests were approved. (*Id.*). Therefore, Plaintiff has failed to show that the reasons Defendant has articulated for his termination were false, or that either race or age discrimination motivated the decision. Therefore, for this additional reason, Defendant is entitled to summary judgment on Plaintiff's termination claim.

## IV.    Conclusion

For all of the reasons set forth above, Defendant's Motion for Summary Judgment (Doc. # 16).is due to be granted.  A separate order will be entered.

**DONE** and **ORDERED** this June 23, 2017.

**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE